# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| KAREN HOWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Case No. 1:15CV20NCC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Karen Howell (Plaintiff) for Supplemental Security Income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. Plaintiff has filed a brief in support of the Complaint. (Doc. 13). Defendant has filed a brief in support of the Answer. (Doc. 16). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). (Doc. 8).

## I.
## PROCEDURAL HISTORY

On February 8, 2011, Plaintiff filed her application for SSI. (Tr. 97-103). Plaintiff alleged a disability onset date of June 15, 2010. Plaintiff's application was denied, and she requested a hearing before an Administrative Law Judge

(ALJ).  (Tr. 25, 43-47, 50).   After a hearing, by decision, dated September 20, 2013, the ALJ found Plaintiff not disabled.  (Tr. 11-20).  On December 4, 2014, the Appeals Council denied Plaintiff's request for review.   (Tr. 5-7).   As such, the ALJ's decision stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.   20 C.F.R. §§ 416.920, 404.1529.  "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)).   In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.  20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities."   Id.  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work."   Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari,

250 F.3d 603, 605 (8th Cir. 2001) (citing <u>Nguyen v. Chater</u>, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. <u>See</u> <u>id.</u>

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC). <u>See</u> <u>Steed v. Astrue</u>, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); <u>Eichelberger</u>, 390 F.3d at 590-91; <u>Masterson v. Barnhart</u>, 363 F.3d 731, 737 (8th Cir. 2004); <u>Young v. Apfel</u>, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's

RFC.  See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5.  If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant."  Id.  See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC.").  Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence.  See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).  See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007).  In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> The concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by

substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. See Krogmeier, 294 F.3d at 1022. See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. See id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him or her to reject the plaintiff's complaints. See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he or she considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. See id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. See Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. See Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used. An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's limitations, but only those which the ALJ finds credible. See Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the

plaintiff's subjective complaints of pain for legally sufficient reasons. See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. See Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff, who was born on July 23, 1977, alleged disability based on back problems, chronic obstructive pulmonary disease (COPD), anxiety, left leg and hand problems, depression, and a learning disability. (Tr. 30, 114). Plaintiff testified, at the hearing, that she had pain in her left shoulder and above her head with reaching; that she had anxiety attacks twice a week or more; that her anxiety attacks were caused by stress and by being around other people; and that she had crying spells twice a week, during which time she isolated herself. (Tr. 337-39, 347).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since February 8, 2011, her application date; that Plaintiff had the severe

impairments of degenerative disc disease, left rotator cuff syndrome, affective disorder, anxiety/panic disorder with agoraphobia, and borderline intellectual functioning; and that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. The ALJ found that Plaintiff had the following RFC: Plaintiff could lift and carry up to 20 pounds occasionally and up to 10 pounds frequently; she could stand and walk up to 6 hours in an 8-hour day; she could sit up to 6 hours in an 8-hour day; she could never climb ladders, ropes, or scaffolds; she could occasionally crouch, stoop, crawl, kneel, balance, and climb ramps and stairs; she could occasionally reach overhead with her left arm; she could perform simple, repetitive, and routine tasks; and she could have occasional interaction with the general public, co-workers, or supervisors. Further, the ALJ concluded that Plaintiff was unable to perform her past relevant work; that, based on the testimony of a VE, and considering her age, education, work experience, and RFC, there were jobs, existing in significant numbers in the national economy, which Plaintiff could perform; and that, therefore, Plaintiff was not disabled within the meaning of the Act. (Tr. 13-20).

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because: The ALJ failed to find Plaintiff met or equaled Listing 12.05C; the ALJ failed to support his decision at Step 5 of the sequential analysis; and the VE's testimony differed from the Dictionary of Occupational Titles (DOT) in

regard to Plaintiff's ability to reach overhead with her left arm. For the following reasons, the court will reverse and remand this matter.

## A.    Listing 12.05C:

The court first notes that 20 C.F.R. Ch. lll, Pt. 404, Supt. P, App. 1 § 12.00(a) states, in relevant part, that:

> The evaluation of disability on the basis of mental disorders requires documentation of a medically determinable impairment(s), consideration of the degree of limitation such impairment(s) may impose on your ability to work, and consideration of whether these limitations have lasted or are expected to last for a continuous period of at least 12 months.

Section 12.00(a) further lists mental disorders in diagnostic categories, which include, among others, intellectual disabilities (§ 12.05).[1]    The Commissioner has supplemented the familiar five-step sequential process for generally evaluating a claimant's eligibility for benefits with additional regulations dealing specifically with mental impairments. 20 C.F.R. § 404.1520a. A special procedure must be followed at each level of administrative review. See Pratt v. Sullivan, 956 F.2d 830, 834 n.8 (8th Cir. 1992) (per curiam).

---

[1] In 2013, the Regulations replaced the term "mental retardation" with "intellectual disability." See Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46499–01 (Aug. 1, 2013). "Both terms 'describe the identical phenomenon,' and the change in nomenclature has been approved by Congress and members of the psychiatric profession." See Johnson v. Colvin, 788 F.3d 870, 873 n.3 (8th Cir. 2015) (citing Hall v. Florida, 134 S. Ct. 1986, 1990 (2014) and Rosa's Law, Pub.L. No. 111–256, 124 Stat. 2643 (2010)). The court will, therefore, use the term "intellectual disability" instead of "mental retardation" unless directly quoting or paraphrasing another source.

The mere existence of a mental condition, however, is not per se disabling. See Lott v. Colvin, 772 F.3d 546, 549 (8th Cir. 2014); Dunlap v. Harris, 649 F.2d 637, 638 (8th Cir. 1981). The sequential process for evaluating mental impairments is set out in 20 C.F.R. § 404.1520a. This Regulation states that the steps set forth in § 404.1520 also apply to the evaluation of a mental impairment. § 404.1520a(a). However, other considerations are included. The first step is to record pertinent signs, symptoms, and findings to determine if a mental impairment exists. 20 C.F.R. § 404.1520a(b)(1). These are gleaned from a mental status exam or psychiatric history and must be established by medical evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. §§ 404.1520a(b)(1).

If a mental impairment is found, the ALJ must then analyze whether certain medical findings relevant to ability to work are present or absent. 20 C.F.R. § 404.1520a(b)(1). The procedure then requires the ALJ to rate the degree of functional loss resulting from the impairment in four areas of function which are deemed essential to work. 20 C.F.R. § 404.1520a(c)(2). Those areas are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) deterioration or decompensation in work or work-like settings. 20 C.F.R. § 404.1520a(c)(3).

The limitation in the first three functional areas of activities of daily living (social functioning and concentration, persistence, or pace) is assigned a designation of either "none, mild, moderate, marked, [or] extreme." 20 C.F.R. § 404.1520a(c)(4). The degree of limitation in regard to episodes of decompensation is determined by application of a four-point scale: "[n]one, one or two, three, four or more." Id. When "the degree of [] limitation in the first three functional areas" is "none" or "mild" and "none" in the area of decompensation, impairments are not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [a claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1). When it is determined that a claimant's mental impairment(s) are severe, the ALJ must next determine whether the impairment(s) meet or are equivalent in severity to a listed mental disorder. This is done by comparing the medical findings about a claimant's impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. See 20 C.F.R. § 404.1520a(d)(2). If it is determined that a claimant has "a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing," the ALJ must then assess the claimant's RFC. 20 C.F.R. § 404.1520a(d)(3).

The Regulations state:

12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits

in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

OR

B. A valid verbal, performance, or full scale IQ of 59 or less;

OR

C. *A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function*;

OR

D. *A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:*

*1. Marked restriction of activities of daily living; or*
*2. Marked difficulties in maintaining social functioning*; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 (emphasis added).

In particular, to show that his or her impairment meets subsection C of Listing 12.05, a claimant must show that he or she had: (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning

manifesting prior to age twenty-two; (2) a valid verbal, performance, or full scale IQ of 60 to 70; and (3) another physical or mental impairment imposing an additional and significant work-related limitation of function.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.  A claimant must show that he or she meets all of the criteria for the listed impairment, and "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify."  See Sullivan v. Zebley, 493 U.S. 521, 531 (1990); 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 416.925(d).   See also Lott, 772 F.3d at 549 ("An impairment that manifests only some of [a Listing's] criteria, no matter how severely, does not qualify.") (internal quotation and citation omitted).

Thus, for Plaintiff to meet Listing 12.05C, she "need[ed] the following:  (1) a valid verbal, performance, or full scale IQ of 60 to 70; (2) an additional 'severe' impairment; and (3) evidence supporting the onset of intellectual and adaptive functioning disability before age twenty-two."  Id.  After considering the evidence of record, the ALJ found that Plaintiff did not meet Listing 12.05C in that she did not have the requisite deficits in adaptive functioning or the requisite IQ before the age of twenty-two, as contemplated by that Listing.  (Tr. 14).

Notably, at the administrative hearing, Plaintiff's counsel acknowledged that Plaintiff did not have an IQ score that met the criteria for Listing 12.05C.  In fact, Plaintiff's attorney stated that Plaintiff had a full-scale IQ of 71, but argued that

this score is very close to that required by Listing 12.05C. Plaintiff's counsel further stated that he understood that Plaintiff's full scale score of 71 "may not meet or equal the listing, but [he] just wanted to kind of bring [it] to the . . . Court's attention." (Tr. 345-46).

Plaintiff argues before this court that, even though the record does not demonstrate she had a qualifying IQ score before age twenty-two, other evidence establishes she had the requisite IQ to meet the Listing. In particular, Plaintiff argues that she has established that she had the requisite IQ prior to her attaining the age of twenty-two based on her participation in special education and in self-contained classrooms beginning in ninth grade, her dropping out of school because "they wanted her to repeat some classes," and her being suspended twice for fighting with other students while in school. (Doc. 13 at 8).

The record reflects, however, that Plaintiff attended regular classes, in addition to special education classes, and that she earned Bs and Cs while in school. (Tr. 146-47). See Johnson v. Colvin, 788 F.3d 870, 872 (8th Cir. 2015) (finding claimant did not meet Listing 12.05C where claimant attended some special-education classes in school, could "read a little," struggled with algebra and history, and ultimately dropped out of school after completing the ninth grade). Also, Plaintiff told Jonathan D. Rosenboom, Psy. D., that she missed days in high school due to her drinking alcohol. (Tr. 182).

Moreover, Dr. Rosenboom, a consultative examiner, administered the Wechsler Adult Intelligence Scale - Fourth Edition (WAIS-IV), on September 9, 2011. Pursuant to this testing, Dr. Rosenboom reported that Plaintiff had a full scale IQ score of 71, a verbal comprehension index score of 74, a perceptual reasoning index score of 69, and a working memory index score of 77, all of which scores were "borderline," with the exception of the perceptual reasoning index score which was "extremely low." Dr. Rosenboom also reported that Plaintiff had a processing speed index score of 86, which was "low average." (Tr. 184). According to Dr. Rosenboom's opinion, Plaintiff's full scale IQ score and various index scores represented "a reliable and valid estimate of [Plaintiff's] current and characteristic level of intellectual functioning." (Tr. 184).

As for activities of daily living, the ALJ found that Plaintiff had only a mild restriction in this area. In this regard, the ALJ considered that Plaintiff reported that she was "able to see to her personal needs and get her children off to school." (Tr. 14). Significantly, Plaintiff acknowledges that she reported caring for herself and her children, but argues that her ability to perform activities of daily living does not suggest that she "is not mentally retarded" and suggests that her living with others supports a finding that her limitation in regard to activities of daily living was more severe than found by the ALJ. (Doc. 13 at 9). Nonetheless, there is no evidence that Plaintiff was dependent upon others for toileting, eating,

dressing, or bathing.  See 20 C.F.R. Pt. 404, Subpt. 1, § 12.00C(1) ("Activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office are considered "adaptive activities.").

Further, the court notes that Plaintiff stated, in a Function Report – Adult, that her alleged disabling conditions did not affect her ability to dress, bathe, care for her hair, feed herself, or use the toilet, and that she prepared her own meals twice a day.  Further, Plaintiff reported that she was able to care for her children, with help from her boyfriend; that she drove a car and went out alone; that she shopped in stores for food and household items; and that she read and watched television.  (Tr. 122-25, 130).  See McGee v. Astrue, 291 Fed. App'x. 783, 787 (8th Cir. 2008) (per curiam) (maintaining a home and raising young children inconsistent with the Listing level for an intellectual disability).  See also Johnson, 788 F.3d at 872 ("Johnson can read, write, and count change; can care for herself and her youngest son, whom she raised from infancy; and can perform most household tasks.  These activities are not consistent with the deficits in adaptive functioning contemplated by Listing 12.05C."); Miles v. Barnhart, 374 F.3d 694, 699 (8th Cir. 2004) (passing driver's license test and driving a car were inconsistent with Listing 12.05 criteria).

Additionally, although a formal diagnosis of an intellectual disability is not required to meet Listing 12.05C, it is notable that the record does not reflect that any of Plaintiff's medical providers diagnosed her with a qualifying intellectual disability. (Tr. 145-47, 161-80, 203-326). As considered by the ALJ, it was often reported that Plaintiff was cooperative, appropriately or well-groomed, and oriented to time, person, place, and situation; that she had intact receptive and expressive language; that she had normal association, judgment, motoric behavior, speech, thought processes, and attitude; and that she had an ability and willingness to learn. (Tr. 31, 166, 170, 171, 174, 177, 178, 213, 218, 221, 251, 254, 256, 257, 259, 262, 265, 268, 269, 276, 277, 280, 288, 294, 297, 300, 301, 304, 305, 307, 325).

Notably, Dr. Rosenboom reported, pursuant to Plaintiff's mental status examination, that: Plaintiff made "adequate and appropriate eye contact"; she had no "bizarre posturing"; Plaintiff's speech had "adequate rate, volume, pitch, and productivity"; her range of oral vocabulary "was not significantly restricted and her grammar was generally good"; she was cooperative, showed good motivation, and appeared to be a reliable informant; she was awake, alert, and attentive during the examination; she was oriented to "all aspects of time"; her immediate auditory memory and delayed auditory recall were not grossly impaired; and her sensorium was "overall" grossly intact. Dr. Rosenboom opined, pursuant to his examination

of Plaintiff, that her ability to understand, remember and carry out complex instructions was "slightly impaired"; that Plaintiff's ability to respond appropriately to work supervisors, co-workers, and work stressors was "mildly impaired" by her panic attacks; and that Plaintiff did possess the capacity to manage her finances. (Tr. 185-86).

Also, as considered by the ALJ, pursuant to his September 9, 2011 examination of Plaintiff, Dr. Rosenboom diagnosed Plaintiff with borderline intellectual functioning, which diagnosis is contrary to a finding that a claimant has a qualifying intellectual disability. (Tr. 17-18, 181-86). See Cox v. Astrue, 495 F.3d 614, 618 (8th Cir. 2007) (holding that an effective diagnosis of borderline intellectual functioning is contrary to a finding of a mild intellectual disability).[2] Indeed, the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 41 (4th ed. 2000) (DSM-IV), states that "[t]he essential feature

---

[2]     The court held, in Cox, 495 F.3d at 618:

> In light of this direct, precise, and extensive discussion in Dr. Ziolko's report, which supports and culminates in an effective diagnosis of borderline intellectual functioning, we conclude that her remark indicating a contrary diagnosis of mild mental retardation was the result of inadvertence or imprecision. To hold otherwise would require the improbable conclusion that Dr. Ziolko had intended to offer a cursory diagnosis in direct contradiction to the careful findings and conclusions she thoroughly recounted and characterized on prior pages, and in direct contradiction to the defining diagnostic characteristics of mental retardation as identified by the DSM-IV that her analysis explicitly addressed.

of Mental Retardation is *significantly subaverage* general intellectual functioning .

. . accompanied by significant limitations in adaptive functioning in at least two

[enumerated] skill areas." Id. (emphasis added).

Similarly, Scott Brandhorst, Psy. D., a state-agency psychologist, reviewed

Plaintiff' medical records, and, after doing so, specifically considered and rejected

a diagnosis of "Mental Retardation," noted that Plaintiff had been diagnosed with

borderline intellectual functioning, and opined that Plaintiff's ability to understand,

remember, and carry out complex instructions was "slightly impaired" by her

borderline intellectual functioning.  (Tr. 18, 189, 191, 194).  As considered by the

ALJ, Dr. Brandhorst's opinion was entitled to great weight because his opinion

was consistent with the evidence and because, as a state-agency psychologist, he

was familiar with the definitions and evidentiary standards applicable to Social

Security disability determinations.  (Tr. 18).  See 20 C.F.R. §§ 404.1527(f)(2)(i),

416.927(f)(2)(i) (holding that state agency medical consultants are highly qualified

experts in Social Security disability evaluation; therefore, ALJs must consider their

findings as opinion evidence).

The court finds, regardless of Plaintiff's IQ scores, that substantial evidence,

including statements made by Plaintiff's counsel, Plaintiff's self-reporting of her

functional limitations, and the findings of Dr. Brandhorst and Dr. Rosenboom,

supports the ALJ's conclusion that Plaintiff did not meet the threshold requirement

of Listing 12.05C - that she demonstrate "significantly subaverage intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." (Tr. 14-15). See, e.g., Cheatum v. Astrue, 388 F. App'x 574, 576-77 (8th Cir. 2010) (unpublished) (holding that, where plaintiff had a valid verbal IQ score of 69, she did not meet the requirements for 12.05C because *she did not demonstrate the necessary deficits in adaptive functioning* before age 22 required for the diagnosis of intellectual disability) (citing Randall v. Astrue, 570 F.3d 651, 659–60 (5th Cir. 2009) (holding that Listing 12.05 requires claimant to demonstrate deficits in adaptive functioning in case where claimant otherwise meets the requirements of Listing 12.05C). In any case, the court finds that substantial evidence supports the ALJ's conclusion that Plaintiff did not have the requisite IQ score to meet the criteria for Listing 12.05C, and that the ALJ's decision, in this regard, is consistent with the Regulations and case law.

To the extent Plaintiff argues that the ALJ should have inquired further regarding Plaintiff's functional limitations, it was Plaintiff's burden to establish that she met all of the requirements of Listing 12.05C. Blackburn v. Colvin, 761 F.3d 853, 858 (8th Cir. 2014). To the extent Plaintiff argues that the ALJ did not provide a thorough analysis of Plaintiff's adaptive functioning manifesting before age twenty-two (Doc. 13 at 8), as discussed above, the ALJ engaged in a lengthy narrative of Plaintiff's ability to care for herself and her lack of dependence upon

others or caring for her personal needs, and concluded that Plaintiff was not dependent upon others. Although the ALJ did not specifically limit his discussion of Plaintiff's adaptive functioning to the period before she turned twenty-two, some of the evidence considered by the ALJ, including Plaintiff's performance in school, related to her adaptive functioning prior to her turning twenty-two.

To the extent Plaintiff points to her limited work history as evidence that she had deficits in adaptive functioning consistent with Listing 12.05C (Doc. 13 at 9), Plaintiff stated, in a Disability Report – Adult, that she stopped working because she "did not want to work." (Tr. 114). See Medhaug v. Astrue, 578 F.3d 805, 816-17 (8th Cir. 2009) (holding that leaving work for reasons unrelated to an alleged disabling impairment weighs against a finding of disability). Plaintiff's past employment, moreover, included her working in home health care and as a cashier at a gas station. See Hillier v. Soc. Sec. Admin, 486 F.3d 359, 367 n.5 (8th Cir. 2007) ("[T]he cashier II (clerical) and check cashier positions require level three reasoning development, defined as the ability to '[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form' and '[d]eal with problems involving several concrete variables in or from standardized situations.'") (quoting the DOT, app. C) (http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM).

Further, Plaintiff denied relationship problems with supervisors and general problems with authority figures. In fact, Plaintiff reported that she got along "good" with authority figures. (Tr. 127, 132, 183).

Additionally, upon considering whether Plaintiff met the requirements of Listing 12.05C, the ALJ considered the medical evidence, as required by the first step of a mental impairment analysis. See Pratt, 956 F.2d at 835; 20 C.F.R. §§ 404.1520a(b)(1), 404.1508. In conclusion, the court finds that the ALJ's determination that Plaintiff did "not have a deficit in adapt[ive] functioning initially manifested during the developmental period" and that she did not have "a valid verbal, performance or full scale IQ of 60 through 70" is based on substantial evidence and consistent with the Regulations and case law.

To the extent Plaintiff argues that the ALJ erred by not finding the medical equivalence of Listing 12.05C (Doc. 13 at 10-11), the ALJ did consider, at Step 3, whether Plaintiff met or equaled any Listing. (Tr. 28). Regarding medical equivalence, the Program Operation Manual System (POMS) guidelines state: "To determine that such a mental impairment does not meet but equals a listed impairment, it must first be shown that the capsule definition of that impairment is satisfied. The capsule definition follows the diagnostic category, e.g., Organic Mental Disorders, and describes the essential features of the impairment." Social Security Administration, POMS DI 24515.056 (available at https://secure.ssa.gov/

apps10/poms.nsf/lnx/0424515056). Listing 12.05C requires subaverage intellectual functioning and adaptive functioning deficits manifested before age twenty-two; and, as found above, substantial evidence supports the ALJ's finding that Plaintiff did not suffer deficits in adaptive functioning.  See <u>McDonald v. Colvin</u>, 2013 WL 5406612, at *11 (E.D. Mo. Sept. 25, 2013) (finding plaintiff did not medically equal Listing 12.05C because he did not suffer adaptive functioning deficits).

In conclusion, the court finds that substantial evidence supports the ALJ's conclusion that Plaintiff did not meet Listing 12.05C in that she did not have the requisite deficits in adaptive functioning or the requisite IQ before the age of twenty-two, as contemplated by that Listing.  (Tr. 14).  Further, the court finds that the ALJ's decision, in this regard, is based on substantial evidence and is consistent with the Regulations and case law.

**B.     Plaintiff's Ability to Perform Other Work:**

As stated above, the ALJ found Plaintiff had the following RFC:  Plaintiff could lift and carry up to 20 pounds occasionally and up to 10 pounds frequently; she could stand and walk up to 6 hours in an 8-hour day; she could sit up to 6 hours in an 8-hour day; she could never climb ladders, ropes, or scaffolds; she could occasionally crouch, stoop, crawl, kneel, balance, and climb ramps and stairs; *she could occasionally reach overhead with her left arm*; she could perform simple, repetitive, and routine tasks; and she could have occasional interaction with the

general public, co-workers, or supervisors.  Plaintiff does not challenge the ALJ's RFC determination other than to the extent she challenged the ALJ's determination that she did not meet or equal Listing 12.05C.  The court has found above that the ALJ's decision in that regard is based on substantial evidence.  As such, the court further finds that the ALJ's RFC determination is based on substantial evidence.

The ALJ posed a hypothetical to a VE describing a person of Plaintiff's age and with her education, work experience, and RFC.  To the extent Plaintiff suggests that the ALJ should have included further limitations in the hypothetical, the ALJ was required to include only limitations which he found credible.  Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006)); Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[T]he ALJ was not obligated to include limitations from opinions he properly disregarded.").

The VE testified that there were jobs in the national economy which Plaintiff could perform, including poultry eviscerator, housekeeping/cleaner, and hand packager.  (Tr. 349-50).  Generally, a VE's testimony constitutes substantial evidence supporting the ALJ's decision.  Martise, 641 F.3d at 927 ("Based on our previous conclusion . . . that 'the ALJ's findings of [the claimant's] RFC are

supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") A VE's testimony, however, does not absolve an ALJ of the duty to consider the DOT. See Kemp v. Colvin, 743 F.3d 630, 633 (8th. Cir. 2014) (remanding denial of benefits because "the record does not reflect whether the VE or the ALJ even recognized the possible conflict between the hypothetical" and the recommended job). Pursuant to this duty, the ALJ stated that he independently considered the DOT and determined that the VE's testimony was consistent with the DOT. (Tr. 20).

Nonetheless, the hypothetical which the ALJ posed to the VE limited Plaintiff to *occasional reaching overhead*, but DOT 525.687-074, poultry eviscerator, requires "*reaching constantly* [] 2/3 or more of the time"; DOT 323.687-014, housekeeper/cleaner requires "*reaching frequently* [] from 1/3 to 2/3 of the time"; and DOT 920.587-018, "packager, hand," requires "*reaching constantly* [] 2/3 or more of the time." (emphasis added). The court is unpersuaded by the Commissioner's arguments that the VE sufficiently justified the distinction between the DOT's description of the jobs which he testified Plaintiff could perform and Plaintiff's RFC. Thus, the court finds that the ALJ's ultimate determination that Plaintiff could work as a poultry eviscerator, housekeeper/cleaner, or hand packager is not based on substantial evidence. The

court will, therefore, reverse and remand this matter. Upon remand, the ALJ should seek clarification from a VE in regard to Plaintiff's ability to work in these stated jobs, and further question the VE as to whether there is work, other than poultry eviscerator, housekeeper/cleaner, and hand packager, which Plaintiff can perform, given her RFC, age, work experience, and education. Also, the ALJ should independently consider the DOT.

## VII.
## CONCLUSION

The court finds that this matter should be reversed and remanded to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. § 405(g), sentence 4. Upon remand, the ALJ is directed to fully develop the record in a manner consistent with this court's opinion.

**ACCORDINGLY,**

**IT IS HEREBY ORDERED** that the relief which Plaintiff seeks in her Complaint and Brief in Support of Complaint is **GRANTED** in part, and **DENIED**, in part. (Docs. 1, 13).

**IT IS FURTHER ORDERED** that a Judgment of Reversal and Remand will issue contemporaneously herewith remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. § 405(g), sentence 4.

**IT IS FINALLY ORDERED** that, upon entry of the Judgment, the appeal period will begin which determines the thirty (30) day period in which a timely application for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, may be filed.

Dated this 9th day of February, 2016.

/s/ Noelle C. Collins
UNITED STATES MAGISTRATE JUDGE